2010-14-24 YANGAROO v. DESTINY MEDIA TECH Now, Mr. McClose. May it please the Court. In this case, audio and other content are uploaded from the United States to Destiny's server. The files are changed in the server in Canada and sent back into the United States in a different form, which is secured, time-locked, and possessible by the recipient. At this point in the proceedings, it must be assumed that the process of the patent is being performed by Destiny. And the reason I say that is because the point we are in the proceedings is critical to understanding why there are two issues in front of the Court and not just one. The District Court in Green Bay, Wisconsin has a very interesting procedure, which actually is a very good procedure for some patent cases, where if there is a narrow, discrete issue which does not involve very much discovery, the parties are entitled to argue that issue, that issue alone, and perhaps get right to the hub of the matter. Here that issue was supposed to be, can 271G ever apply to digital products? We certainly agree that that is a narrow issue, an important issue, and one where there is some support, actually a significant amount of support, in this circuit's rulings that it might very well not be under the literal language of existing holdings. We believe that issue, because there were District Court opinions on the other side, was right for a legal determination with very little discovery. There was one fact deposition, two expert depositions. At the reply brief stage in summary judgment, and we were the respondents, so we didn't get to reply to the reply brief, and in the Court's decision, a claim construction crept in that held, that Destiny argued for the first time in that Court, held for the first time that 271G shouldn't even apply to this patent because it doesn't claim a process for manufacturing anything digital or not, but instead as a method for distribution. We would like to argue to this Court, because it is dispositive, it is important, that 271G can apply to digital products in 2011, notwithstanding the holdings in Bayer or NTP. And then I will get to the issue of why we think it is procedurally defective that a holding that it wouldn't even apply to 271G. In 2011, digital products are goods. They're goods with value. They're goods that are bought and sold. They're goods that are possessed by the recipient, even though they might not be tangible. I say they might not be tangible, because at some point in their possession, the Microsoft case of the Supreme Court, AT&T versus Microsoft, did suggest that the data on hard drives may be tangible. However, for purposes of this case, the importation of the data, we admit, is not tangible. It is bits going from the server to the recipient. However, it does go to the recipient and the individual recipient in a form that can be possessed. The audio content, movie content, book content is now bought and sold. My CD store has closed. I buy my music on iTunes. Borders is in the process of closing. I will get my books on Kindle. And I believe when Congress was discussing the issue of goods, importation of goods, and goods produced by a method or process that would cover these kind of digital goods, had Congress considered it in 1986, because it did concern the issue of goods. I say this notwithstanding the holdings in Bayer and NTP. The reason I say that is Bayer's holding concerned information, research information, and not something that even today would ever be considered a good. But Bayer does go so far as to say that 271G applies only to physical products. So we are bound by the holding of Bayer. So even if I 100% agreed with your argument, and even if I thought Bayer was completely wrongly decided, that's something you have to argue to the in-bank court. I hope you realize a panel of this court can't overturn that. I understand that if that were the holding. But I don't think that was absolutely required for the holding in Bayer. I think instead, Bayer- Well, it may not have been required for the holding. I agree it probably could have been decided more narrowly. But because we conclude that infringement under 271G is limited to physical goods, the physical goods here were not manufactured by a process claim, blah, blah, blah, blah. It's clearly the holding. It's the rationale, even if it wasn't an absolutely necessary rationale, right? That language certainly is in Bayer, and Bayer does require a physical product and a tangible good. And decides the case before it based on that. I mean, not based on ... It's not as if Bayer said, well, here's the narrow ground for decision. And by the way, we don't really have to rest there, because since we've got your attention, we'll just say that these things don't apply, that the statute doesn't apply to non-physical products. In Bayer, however, the issue was ... The concern of the court was the protection of abstract information. And we believe that the logic of the two district court opinions that we cited, which did discuss Bayer, do take into account the more modern issue of the digital products. And it doesn't do offense to the rationale behind Bayer. I do agree it tweaks the wording of Bayer, because if the concept is physical, as I said, it's arguable that it's eventually physical possessible, but it does not pass through the border in a physical way. It does pass as information, as data. So we do ask this court to clarify Bayer, and I don't believe it is overruling Bayer, because the same research data from Bayer, or the transmission of information in NTP, would not be covered. Because what we say is that digital goods that are bought and sold by consumers today, and no one can argue that the music files, movie files, et cetera, are goods that are bought and sold, are within the intent of Congress. Why don't you move on to your second point, which, because this is not the basis on which the lower court decided this case. Correct. So why don't you move on, because you have a very limited amount of time, why don't you move on to the point about whether or not the claim discloses a product made by a process. The issue we were discussing right now, whether this requires the overruling of Bayer, whether Bayer or NTP decided it. That's the issue you thought the district court was limited to under the terms of the agreement. We did. The district court went farther. And what's wrong with that? The record makes clear that that's the issue that should have been decided. The court made clear that discovery was going to be limited to three issues. The location of the servers, the nature of the result of the processes on Destiny's servers, and the software marketed by Destiny in the U.S. Notably missing was any discussion of claim construction, because under the theory that Bayer prohibits any non-physical product from being covered by 271G, it doesn't matter. What proves that it wasn't the issue in the case, at least as the parties had agreed to it, is Destiny's own summary judgment motion, which right in its argument on 271G makes the NTP and Bayer argument and did not assert that the claims of this patent shouldn't even have the benefit of 271G. So the response by Yangaroo was simply arguing the issue of, can a digital product be covered by 271G? We never had the opportunity, because of the fast-track, narrow, discreet summary judgment procedure, to interpret the patent, put on evidence of what the concept of providing access means, to show the court that the patent itself does say that the providing access is the transformation of the uploaded files into one of several types of files, one being an encrypted file and a decryption key, which together can provide access at the proper release time or state, or the sending of unencrypted information at the proper time. Both of those are transformed products that we say is the digital product. But here's the, I guess the question I have from a claim construction standpoint, is the claim says receiving and storing at the server a content file, so you receive it and you store it, so you didn't create it, when the server gets it, it's already created, you step E, providing access to the content file, well, you know patent law, the E means antecedent basis, it means you have to be talking about the same content file above, otherwise you've got no antecedent basis for it, so why aren't they providing access to the thing that was received and stored? I mean, that would be the most logical claim interpretation. And may I answer that in two ways? The procedural way is the parties simply didn't have an opportunity to argue that issue. My substantive answer would be, and it would be more developed below with evidence because now I'm speaking outside what I viewed as the scope of the Fast Track Summary Judgment Procedure, the content file referred to the song, the advertisement, whereas the uploading and the receiving of it did have a transmission, a transformation of the digital data. And that's... Talking about the encryption. I'm talking about either the encryption or the streaming. And both of those are discussed in the spec as the preferred embodiment of this claim. So the claim construction that the content file refers to exactly the same type of data going in and going out as opposed to the underlying content or music would be a claim construction inconsistent with the specification of this patent and therefore the preferred embodiment would be outside of the claim construction. Obviously, this would be much more developed if it were part of the record. But as you can see, that would take it from being a Fast Track Summary Judgment Procedure into being the full-blown litigation. You're into your rebuttal time. Do you want to say anything? I would like to reserve that. Very good. Okay. Mr. Sabany. Thank you. I'm just going to use this chair as the easel for the... This works. Bear with me for one second. Okay. Excuse me, Judge Breyser, would you like to... Yes, why don't we... Hold on just a moment. Why don't we take these... They're very hard to see. Okay. I'm sorry. Thank you. Your Honor. Your Honor, this is a relatively easy case. The district court got this case right because fundamentally, it's not a question about whether a digital product can be a product. It's about the patent claim. As this court has said on a number of occasions, the name of the game is the patent claim. Now while opposing counsel has said they never had an opportunity to present claim construction, the fast-track summary judgment was not something that had been forced on the parties. It was actually voluntarily brought to the court that we would want to use fast-track summary judgment to dispose of the extraterritoriality issue. Furthermore, while it's true that the opening brief that the appellees filed for the summary judgment motion concentrated on the tangible issue raised here with regard to 271G in the NTP case, from the NTP, that the requirement that a process transform data and produce a tangible result was a standard devised to prevent patenting of mathematical abstractions. The point is, in Bayer, we held that a research data tangible result did not garner protection of 271G. So that was actually... Bayer was followed in NTP. And this case really is the NTP versus RIM case regarding 271G all over again. Now the issue here is that in the opposition brief that was filed by the appellant, they actually raised for the first time the notion that the manufacturing step was going to be something that happened when the providing access step, and that's why it was a claim over manufacturing. So in fact, they actually raised the issue in their opposition brief. Now in response to that, in the... I'm sorry, I didn't follow you. Are you saying that they did have an opportunity, they were on notice, they understood that this summary judgment was directed to whether or not the claim resulted in a product created by the patented process? Well, they had been, interestingly, when we asked during their expert witness's testimony, he testified he was not given a claim construction, he had not opined on claim construction, but concentrated on the burning of a CD at the user's computer as being what was appeared to be at the time what they were thinking of as the infringement. So for the first time, they raised the notion that this encryption production aspect on the server was the manufacturing step that they were going to base their 271G argument on, and that was not, they didn't bring it up as a claim construction argument. Counsel, it's not their obligation to bring it up, it's your summary judgment motion. You move for summary judgment of non-infringement. Correct. And you would agree, of course, the district court's not free to grant summary judgment of non-infringement on some issue that you didn't raise, and that they never had an opportunity to address. Like, suppose the district court said, well, you know what, I don't know if there's any log-in information here. My goodness, you didn't argue anything about log-in information, the words don't probably appear anywhere in your brief, they didn't argue anything about it, it wouldn't be fair for a court to Rule 56 without giving an opportunity to be heard, the rule says so expressly. So I think his point, as I understand it, is that this was a fundamentally procedurally improper Rule 56 because you moved on one basis and one basis only, that the digital media and Bayer case resolves this issue, but yet then the district court decided the case on a totally different issue. So that's what I'm trying to understand is, did you provide notice and did they have an opportunity to be heard at all? We did not provide them, we didn't tell them that we were going to do a claim construction other than what was in our, in the opening brief we did raise some claim construction there for what we thought was pertinent, but it was the opposition brief that raised for the first time the notion that this encryption that they would talk about in the patent was going to be what they considered the manufacturing step. But the reason why they didn't bring it up as a claim construction, specifically, is they had a problem. Before we even got to the summary judgment motion, we had looked at the last line of the patent claim as providing access at the recipient's terminal as actually raising the question of joint infringement. And we brought a 12B6 motion because they didn't plead joint infringement in their complaint. And they said in their brief, they said specifically in opposition to the 12B6 motion, they said proof of infringement in this case does not require plaintiffs to set forth evidence regarding defendant's customers or defendant's control over their customers, and at the time the customers were referring to the recipient's computers. And that's at A0073. And so having said that to the district court, they were now stuck because while now in front of this court, they're saying that the, they say in the brief in page 21 that the encryption of the file is part and parcel of the providing access step, and that the decryption occurs on the recipient computer system. If they had said that to the district court, that would have been a complete contradiction to what they told the district court in order to maintain the case in the face of the 12B6 motion that had been brought before them. I guess I don't understand, I certainly understand the point you're making now, but I don't know is it responsive to the question that I had asked. And the question that I'm focused on is his primary oral argument to us today is that he was deprived of notice and an opportunity to be heard on the issue of whether or not the content file is created by the patented process, that that was something that didn't occur in anyone's briefing until your reply brief, and then the district court decided it on that basis. And so I'm trying to appreciate, do you agree with that representation factually? No. Okay, so where was this issue brought up earlier? Show me in a brief or in a document in the appendix where it's clear that this was the ground upon which you were moving for summary judgment. On the grounds that we were, I don't have a specific citation of where we brought up the specific question of do they manufacture anything, I would have to, I'd be happy to provide you that information. But as I recall, it was the, as a result of the opposition brief, where they had raised the notion that the providing access step was the manufacturing step, that they, that provided, that got them around the problem of what you raised, the content file antecedent basis is actually a content file provided by the record label and pre-exists. I mean, I'd like to point out in response to your question that what they say about that patent claim element in their brief on page 19 is they say that while the album single track video or album artwork might have existed in some form, the recited content file did not. That unique and valuable content file is the product both created and imported into the United States. Now, if that is fundamentally what they want the district court to see, that's on page 19 of appellant brief, the, if the content file they're talking about is recited, which we know refers to a patent claim, they're reciting the content file in the providing access step. And if that is now something different because of this, because there was some different form, that means that they're referring to a different content file at step B, receiving and storing at the server a content file. So therefore, by definition, there can't be any infringement. So while... Did they ask for any sort of reconsideration that the district court, did they raise an issue that this is unfair, we haven't been given an opportunity to provide notice or we haven't been given notice, we haven't been given an opportunity to argue about the content file being manufactured after the district court granted summary judgment, even if it was in provident, did they do anything to raise that issue? No, there was nothing. After the district court issued its ruling, they filed a notice of appeal. Is there a mechanism by which they could have asked for reconsideration? I don't know offhand. I believe they could have asked for reconsideration. And I think the court probably would have taken that seriously because during the phone call with the judge when fast track summary judgment was decided, the judge said nobody had ever asked for that before. He was intrigued that we were going to do that as a way to... Ask for the fast track? Fast track summary judgment, which he provides in his particular rules in his court. So it would seem to me that if that's really what the defect was, that the fast track summary judgment hadn't been applied correctly, that the appellant could have asked the trial court to have his brief, the claim construction, but you see they've locked themselves into a corner because in the 12B6 motion, they said this theory that they're raising now that the decryption and the encryption... Procedurally.  Yes, ma'am. Did they... Sure. So there was briefing and then was there an actual argument on the summary judgment? There was not an oral argument, no. No. So the case was decided on the brief. On the brief, yes. On the paper. I mean, there was a straight paper that had been filed afterwards, but I don't think it was included in the appendix. I'm not sure if the courts considered it. So in fact, the appellants did actually file another paper, as I recall. But the point is, is that if you consider the fact that claims can be considered de novo here in this court, claim construction, I don't think that the appellant either exhausted... They weren't forced into the situation. I mean, they volunteered to go into the fast track summary judgment. And patents are not considered and reviewed in a vacuum. I mean, you have to read the claim. So the whole notion that we're going to do fast track summary judgment on a patent claim, and this is a patent claim that issued after five or six years of patent prosecution and 109 rejected claims. And then finally, this one claim came out. The fact of the matter is, the notice is thinking that the court is going to ignore what it says in the patent. And if you consider the NTP case, when the NTP case was looking, and this is very important, when the NTP case was looking at the patent claim brought by NTP, they were looking at the preamble. And it cites several of the preambles of the claim. They're looking at the preamble, saying, claiming a method of transmitting and distributing an inputted message. And I also want to point out, the California cases cited by the appellant made it very clear that they were distinguishing the NTP case on the basis of what it said in the patent claim. Those two cases were about patent claims over a method of creating or generating a data structure. And they specifically, the district courts, distinguished NTP because NTP was about a method of transmitting and distributing an inputted message. Now, appellant tries to distinguish NTP by saying, well, email's information, right? Email's information, but we're talking about a valuable product. Well, anybody who's fooled around with email knows that you can attach any of these music files or video files, and on the record, the expert admitted this was the case. You can attach them to an email so that the email transmission data stream now contains what was the content data. So the notion of distinguishing email in the NTP case from valuable content really is unworkable and unrealistic. Do you mind if I ask you a question on the Baer case and on the argument that was made to us in the briefs and an oral argument is that effectively that Baer is wrongly decided. That section 271G, when it uses the word made, it shouldn't be limited to physical products and the manufacturer of physical products. Do you think Baer got that statutory interpretation issue correct? I think with regard to methods of transmitting information, whether you call it content or not, it's information. I think actually, I think it's correct, and the reason why is this. If you have 271G that's now asserted over methods of transmitting information so that whatever files this process generates are now considered a product, now you have a problem with regard to 271G of comedy in international law, and I touch on that in our brief to you. And for example, sort of paraphrasing the example I gave in the brief, if you have somebody operating a server in Paris that performs this method, but they're delivering it to somebody in Lyon, and then the person in Lyon transmits the file into the United States, you can say, okay, well now the person in Lyon is infringing this patent because they're in the United States as a product of a patented process. But the problem is it's a bit-for-bit copy, and when you look at the statute, and it hasn't really been touched on by the appellant, the statute says that there's been a material change, let me get the exact quote, the second half of the statute has to be considered, where the material change by subsequent process is now exempt from 271G. Now the appellant doesn't even address this at all in any of their briefing. Now the question is, well gee, it's a bit-for-bit copy, but it's a different copy, so is that material changed or not? And you have to get into all of this and open up an entire doctrinal can of worms over where we draw the line, and if it turns out that computer in Lyon was not a person who actually voluntarily retransmitted the file, but it was like a network server. That might be, your bit-for-bit copy argument might be an argument for why this particular issue, this particular product might not fall under 271G, but you seem to be running away from the notion that the word made, I mean, Bayer hinged its entire analysis on the word made, equaled manufactured, and since made equaled manufactured, therefore it only applied to physical products. I mean, do you think that's a defensive statutory interpretation point? I think it's defensive based on the legislative history at the time. Okay, well, then the one thing that really baffled me when I read Bayer is no one seems to have argued it, and it didn't seem to come up. Bayer hinges its analysis on 287, which is marking, right? It points to two other uses of the word made and make in the marking statute. Well, of course, you can't mark something that isn't physical, right? You can't mark an intangible, so it doesn't surprise me that that might result in a physical taking. But what about 271A? It says it's an act of infringement to make, use, offer to sell, or sell, yet this 271A clearly applies to intangible products, too. You can make software. You can make digital files. I'm happy to answer that, and besides the fact that the appellant conceded they don't have a case under 271A. No, no, I'm not suggesting they have a case under 271A. Hold on. I'm not saying they have a case under 271A, or they argued it. What I'm saying is it's a matter of statutory interpretation. Figuring out what the word made means in 271G, doesn't it make sense to look at the same word in 271A and understand that it's been broadly interpreted to include digital products and is not limited to physical products? I know that Justice Ginsburg in the Supreme Court in the AT&T case sort of poked at that issue and said that, well, the manifestation of the intangible on the hard drive of the data object that made the invention under 271A, I think it was under 271A, when she was deciding that case, or when she was writing that opinion. There is the notion that the tangibility arises, at least can arise, in the manifestation on the disk drive was one thing that the Supreme Court looked at, but in this case the importation of a product is the transmission across the border. There's no 271A case here because the patent claim is not a method of manufacturing anything. It says on its face it's a method of distributing the content, which is digital data. It's exactly the same thing that you were faced with, that this court was faced with in NTP versus RIM, when NTP brought the argument that a patent claim over a method of transmitting and distributing an inputted message was manufacturing the email. And this court rejected that argument then for the same reasons. It should do so here and affirm the district court. Very well. Thank you. Thank you. And Mr. Saboli, we'll hear the final argument of Mr. Margolis-Mazzini. Thank you, Your Honor. We stipulated to the fast-track summary judgment because we knew very well that the district court and ultimately this court could decide on the discrete issue that the Bayer language is to be taken literally and a digital product could not be covered under 271G. In order for you to win, don't we have to say that Bayer doesn't apply to this case? You would have to say that Bayer's language, that 271G, only applies to tangible products, is an incorrect wording. And while it can be made or manufactured, a digital product can be made or manufactured. We do want this court would have to take it. I mean, regardless of the ground that was employed by the trial court, that is something we have to overcome. You would have to. Oh, yes. And there are two ways you could overcome it without going on bond. The first way you could overcome it is by saying that language regarding tangible and manufactured wasn't necessary for the holding and, in fact, something can be made or manufactured in 2011 without being tangible, physical, hold it in your hand. The other way you could tweak or change the language of Bayer is to rely on what Justice Ginsburg more than poked at, but did actually rule in the ATT Microsoft case. And at under 271F, she said Windows in the abstract, Windows the master, is an abstract information. However, a copy of Windows, whether that is put on a disk or sent to a hard drive, can actually be a component. And component, while it's not physical, it has the same property type, good type attributes of a good, certainly what Congress would have considered a good in 1986. As you can see by the arguments Destiny is giving today, there are many other issues in this case. Issues that would be certainly argued in this case, but none of which are necessary for the discrete fast-track summary judgment issue. It is a rare procedure. The judge was a little surprised that someone litigating a patent case would go to one argument as opposed to offer all his arguments at the same time. We think that showed respect for the discrete issue, respect for this court's decisions in the earlier two cases, and the fact that that law was a purely legal issue that could be looked at, and two district courts, in fact, unreviewed by this court, have come out with a contrary ruling. We don't think it's fair that having agreed to the fast-track summary judgment procedure, and if you look at page A71 through A73 of the appendix, which is the initial summary judgment briefing, all that argued is NTP and Bayer say information can never be covered. It did not argue the claim construction, and we, in fact, say it's not so plain that the claim is not a method of manufacture. Yes, the preamble says a method of distribution, but that is, one, not necessarily a limitation, and two, a full reading of the claim, if that were developed, shouldn't so limit it. We never had that opportunity, and that's why we argued it the way we did. Very well. Thank you, Mr. Mikulas. Mr. Sabany, the case is submitted.